Estado Libre Asociado de Puerto Rico, peticionario, *v.* Tribunal Superior de Puerto Rico, Sala de Expropiaciones, Pedro Santos Borges, Juez, demandado; Planta de Cal Hicaco, Inc., interventores.

*Número:* C-66-36      *Resuelto:* 10 de octubre de 1967

*J. B. Fernández Badillo, Procurador General, y Adaljisa Díaz* de
*Collazo, Procuradora General Auxiliar,* abogados del peti-
cionario; *Clemente Pérez Martínez* y *R. Elfrén Bernier,* abo-
gados de los interventores.

EL JUEZ ASOCIADO SEÑOR BELAVAL emitió la opinión del
Tribunal.

■ Partiendo del supuesto que los dos islotes de "Hica-
cos" y "Ratones" eran propiedad del Estado Libre Asociado
de Puerto Rico, el peticionario radicó en la Sala de Expro-
piaciones del Tribunal Superior de Puerto Rico, una solicitud
de expropiación de cualesquiera derechos que pudieran tener
los interventores, depositando la cantidad de dos dólares como
el valor razonable de los posibles derechos propietarios de los
interventores. Parece que también se partió del supuesto
que la posesión de los interventores, a pesar de título de
dominio inscrito que acreditan, era una posesión en precario.
Resultado, que la acción presentada para expropiar ambos
islotes, posiblemente no cumpla con el mandato constitucional
que prohibe tomar o perjudicar la propiedad privada para
uso público sin el pago de una justa compensación y en
la forma provista por ley, siendo la forma estatutaria, la
previa consignación de lo que el expropiante estime como
el justo valor de la propiedad.

La ilustrada Sala sentenciadora, con su habitual pericia
y recto sentido del procedimiento, se enfrentó con el primer
problema de la cuestión litigiosa: Si el Estado resultaba ser
el dueño de los dos islotes que se pretendían expropiar, o
por el contrario, eran los interventores los verdaderos dueños.

La historia del título que alegan tener los interventores
es bastante breve. En el 1872, en virtud de la autoridad que
le concedía la Real Orden de 11 de junio de 1868, la Junta
Superior de Repartimiento de Terrenos Baldíos de Puerto
Rico, decretó la expedición del correspondiente título de am-

paro sobre dos islotes conocidos como "Hicacos" y "Ratones" a favor de don Leandro Fort y Torres, entonces Capitán del Puerto de Fajardo, y en cumplimiento de dicho acuerdo, el Excelentísimo Señor Gobernador Superior Civil Don Ramón Gómez, Presidente de la citada junta, a nombre de Su Majestad, el Rey Don Amadeo Primero, le confirió la propiedad efectiva de dichos islotes a don Leandro Fort y Torres "para su posesión y goce como verdadero dueño bajo la condición indispensable que se impuso el mismo peticionario de tenerlo a disposición del gobierno en cualquier tiempo que se le exija y la imprescindible de cultivarlo en su décima parte dentro del término de un año, en la cuarta parte dentro de cuatro años y la mitad dentro de diez años, a beneficio de la agricultura bajo la pena de la revocación de esta gracia y reversión de dicho terreno al Estado en el caso de incumplimiento de la referida condición; y con la condición que asimismo se le impone de que a los dos meses cuando más de la fecha de este título ha de dar principio al cultivo de los terrenos que se le conceden, en cuyo caso no podrá turbársele en su posesión ni disputársele su dominio, pues antes bien se le amparará y sostendrá por los Jueces territoriales y demás autoridades a quienes se exhorta y requiere al efecto, debiendo pagar el agraciado los derechos de tierra."

En cuanto a la primera condición indispensable que se dice se impuso el propio peticionario (Leandro Fort y Torres) de tener los islotes a disposición del Gobierno en cualquier tiempo que se le exija, se trata de una reformulación por pura cortesía burocrática de la tradicional obligación de todo poblador, habitante o residente de tierra sometida a una soberanía reconocida por el Derecho de Gentes de permitir los emplazamientos de la artillería de campaña, la vigilancia marítima por patrullas armadas, los servicios de guardacostas necesarios en cualquiera emergencia para la defensa de la Isla. En cuanto a la segunda condición relacionada con las siembras, parece que don Leandro Fort y Torres no cumplió

a cuenta cabal, aunque algo cumplió, con su obligación de sembrador. No se debe olvidar que los islotes envueltos en la concesión eran terreno accidentado, montuno, con un extenso lecho de piedra caliza, empotrado en la soledad del mar como esos despeñaderos de costa donde se descuernan los cabros alzados. En tal incumplimiento de la obligación de siembra, en el año 1887, don Leandro Fort y Torres vendió la propiedad a los vecinos de Fajardo don Juan Lavaggi y don Ignacio García.

Parece que tampoco los nuevos titulares cumplieron a prendas dadas, aunque algo cumplieron con sus obligaciones de sembradores, pero, iniciaron un negocio de cantería del cual aún existe prueba de una provechosa explotación industrial.

En el año de 1890, el Estado español practicó una investigación sobre el cumplimiento de la condición de siembra y descubriendo que no se habían cumplido los requisitos de la segunda condición, obtuvo la reversión de la propiedad en favor del Estado el 29 de agosto del mismo año. Felizmente, el 17 de abril de 1884, a propuesta del Ministro de Ultramar, de conformidad con el Consejo de Estado en pleno, Su Majestad, el Rey Don Alfonso XII, por Real Decreto de la misma fecha adoptó el Reglamento para la Composición de Terrenos Realengos en Puerto Rico—Vide: CXXXII *Colección Legislativa de España, Primer Semestre de 1884,* 331–334 (edición de la Imprenta del Ministerio de Gracia y Justicia de 1884)—cuyo Art. 5o. disponía, en cuanto a terrenos realengos: "Los poseedores de terrenos que careciendo de justo título y no pudiendo alegar el derecho de prescripción establecido en el art. 2o. de este reglamento—veinte años de posesión continua si se encontraren cultivados y treinta años si se hallaren incultos—los tengan en la actualidad destinados a cafetales o a cualquiera otro cultivo agrario, a los cuales se refiere el párrafo tercero de la Real Orden de 5 de junio de 1887, podrán adquirir la propiedad de los mismos

por composición, pagando a la Hacienda el valor que por la tasación correspondiente se asigne al terreno en la época en que indebidamente fue ocupado."

Por otro lado, el Art. 9o. del mismo Reglamento disponía que la tramitación de los expedientes sobre composición, y de los incidentes a que den lugar, competirá a la Intendencia General de Hacienda; el Art. 10o. disponía que los interesados elevaran sus solicitudes al Intendente General de Hacienda, expresando en ella el nombre del pueblo y el del sitio en que radicare el terreno cuya composición se pretendiera, así como los linderos y cabida aproximada del mismo; el Art. 13 disponía que los títulos de propiedad de los terrenos adquiridos por los poseedores de que habla el Art. 5o. del Reglamento y de los que hayan sido adquiridos por composición se otorgaran por el Intendente General de Hacienda pública de la provincia.

Valiéndose de su todavía vigente condición de poseedor, don Juan Lavaggi por mediación del Alcalde de Fajardo don Delfín Sierra inició las gestiones pertinentes para obtener la composición—entiéndase la transformación de una falta en un cumplimiento substancial—presentando ante la Intendencia General de Hacienda, poniendo bajo testimonio público el hecho jurídico de haber intentado tanto él como su socio don Ignacio García "hacer siembras en dichos islotes sin haber obtenido frutos por ser el terreno seco y demasiado esteril, sintiéndose en dicho sitio fuertes sequías que lo hacen improductivo, pudiéndose únicamente sembrar una muy pequeña parte de pastos en ciertas épocas del año que destina para la bueyada de la hacienda de caña que poseen en esta localidad, habiendo establecido en los expresados terrenos la industria de fábrica de cal que es a lo único que se presta por ser el islote casi todo de piedra y cuya industria tiene establecida hace años satisfaciendo las contribuciones que por tarifa tiene señalada la expresada industria." Esta declaración fue acompañada por otra del alcalde del

barrio de la Sardinera, don Cecilio Quiñones, prestada ante el Secretario del Ayuntamiento de Fajardo don Manuel Vilá el 5 de marzo de 1887, en la cual declara dicho Sr. Quiñones, conocer los islotes denominados "Hicacos" y "Ratones" contiguos a la jurisdicción de Fajardo y saber, "que en la actualidad se encuentran una parte de ellos o sean unas veinte cuerdas sembradas de pastos de guinea en donde pasten algunas veces la bueyada de la hacienda de los Sres. García y Lavaggi, no existiendo ningún cultivo por ser estéril el terreno y la sequía de que.sufre y que existe un horno de cal, cuya industria explota hace años D. Juan Lavaggi. Que lo declarado es la verdad ofrecida en su juramento prestado, afirmándose y ratificándose en su contenido, leída que le fue ésta su declaración manifestó estar conforme con ella, firmando luego del Señor Alcalde por ante mi el Secretario de que certifico", don Manuel Vilá.

En 2 septiembre de 1887, el Excmo. Sr. Intendente General de Hacienda se dirige al Sr. Alcalde de Fajardo informándole que por acuerdo del día anterior había decidido declarar en estado de cultivo veinte cuerdas de pastos sembrados de las que ·poseía en aquella fecha la sociedad García y Lavaggi, de las cuarenta y cinco cuerdas, cuarenta y cuatro céntimos de otra de terrenos concedidos a D. Leandro Fort para que manifestara si estaba o no de acuerdo con la declaración hecha por la Intendencia de la parte cultivada. El objeto que perseguía este informe de tasa administrativa era hacer viable la aplicación de la escala de pagos propuesta por el Art. 7o. del Reglamento para la Composición de Terrenos Realengos en Puerto Rico de 1884. El día 9 de septiembre· de 1887, el Sr. Alcalde de Fajardo D. Delfín Sierra le comunicó al Sr. Administrador Central de Contribuciones y Rentas, siguiendo el procedimiento autorizado por el Art. 12o. del mismo Reglamento, que considerada la comunicación de 2 de septiembre de 1887 de la Intendencia General de Hacienda, los Sres. García y Lavaggi estaban

conformes con la declaración hecha por la Intendencia de veinte cuerdas de pastos sembrados en el islote "Hicacos" propiedad de dichos señores. En contestación al oficio de fecha 18 de diciembre de 1890 dirigido a don Juan Lavaggi por el Sr. Administrador Central de Contribuciones y Rentas, requiriéndole informara su conformidad "a entrar en composición con la Hacienda sobre las condiciones de conversión en el Islote Hicaco", dicho D. Juan Lavaggi, por mediación del Sr. Alcalde de Fajardo don Cristóbal Andreu, envió su conformidad para entrar en composición con la Intendencia General de Hacienda. Aprobada por el Excmo. Sr. Gobernador General de Puerto Rico las diligencias de la composición, el día 11 de abril de 1892, en virtud de la facultad que le concedía el Art. 13o. del Reglamento, el Excmo. Sr. Intendente General de Hacienda le informó al Sr. Alcalde de Fajardo, que "de acuerdo con lo propuesto por este centro y con la aprobación del Excmo. Sr. Gobernador General, he tenido a bien conceder a Don Juan Lavaggi el derecho de adquirir por composición, previas las operaciones de mensura y tasa, 45 cuerdas de terreno que le fueron concedidas a Don Leandro Fort en el Islote Hicacos de esa jurisdicción. Lo que comunico a Ud. para su conocimiento y a fin de que lo notifique al interesado quien depositará 100 pesos en esa Alcaldía a disposición del Oficial facultativo para atender a los gastos de esas operaciones." Por último acotaremos que en el informe rendido por el Ingeniero de Minas Mr. Frederick P. Bayles al General George W. Davis, Gobernador de Puerto Rico con fecha 23 de julio de 1899 se dice que del grupo de tres islotes, nombrados "Hicacos", "Ratones" y "Lobo", los primeros dos pertenecen a un residente de Fajardo y en el informe rendido por el Alcalde de Fajardo D. José M. Rivera a la Secretaría Civil, el día 5 de febrero de 1900, están inventariados los islotes de "Hicacos" y "Ratones" como propiedad de los señores García y Lavaggi.

Hemos acotado *in extenso* el expediente gubernativo en que se basa la concesión original a don Leandro Fort y Torres, la reversión por incumplimiento de la finca ya vendida a los señores Juan Lavaggi e Ignacio García y la composición otorgada a favor de don Juan Lavaggi, el 12 de abril de 1892, por haber muerto ya a esa fecha don Ignacio García, quien murió el 7 de marzo de 1890, para demostrar que no hay conflicto de clase alguna entre la composición final otorgada a don Juan Lavaggi de acuerdo con el Reglamento para la Composición de Terrenos Realengos en Puerto Rico del 1884 y las constancias registrales de las dos inscripciones primeras de la finca Núm. 104 inscrita al folio 27 del tomo tercero de Fajardo del Registro de la Propiedad de Humacao que le sirven de fundamento al tracto sucesivo de los terceros de buena fe. Para mayor claridad titular, una sola sucesión hereda tanto la participación correspondiente a don Ignacio García como la correspondiente a don Juan Lavaggi. Cuando fallece el 7 de marzo de 1890 don Ignacio García instituye como sus únicos y universales herederos a sus hijos José Ignacio, Heriberta, Josefa y Aurelia García Becerril habidos de su matrimonio con doña Josefa Becerril Lafont; al fallecer el 4 de febrero de 1901, don Juan Lavaggi, por carecer de hijos legítimos instituye como sus únicos y universales herederos a su esposa Rita Alonso Rivera, quien vende su participación al resto de los herederos y a los hijos de su socio Ignacio García, los nombrados José Ignacio, Heriberta, Josefa y Aurelia García Becerril. Son estos cuatro herederos, dueños de la totalidad de los islotes "Hicacos" y "Ratones" quienes los venden a don Jorge Bird Arias.

■ Examinada la concesión original de la Junta Superior de Repartimiento de Terrenos Baldíos a don Leandro Fort y Torres no hay duda de su legitimidad como título. La concesión es tanto un acto legislativo como un contrato privado y puede ser una gracia o una encomienda onerosa. Es cierto

que en la concesión original a don Leandro Fort y Torres, había una condición de siembra de aplicación general a toda concesión de tierra baldía, que en alguna forma queda parcialmente incumplida, pero, no es menos cierto que lo accidentado del terreno envuelto, la infertilidad del mismo, no era susceptible del desarrollo contemplado en el plan general de siembras, según lo demostraron los testimonios desinteresados que acompañaron las diligencias de la composición y por tanto, no es difícil concluir, como cuestión jurídica, que hubo un cumplimiento substancial de la condición en las siembras de pastos para ganados y en la explotación de la cantería que hicieron en los islotes repartidos tanto don Leandro Fort y Torres, como sus Sucesores en títulos don Ignacio García y don Juan Lavaggi.

Si llegamos a esta conclusión, tenemos que aceptar que la concesión condicionada otorgada a don Leandro Fort y Torres, en virtud del cumplimiento substancial de la condición, se transforma en un título legítimo, suficiente al traslado del dominio. No debemos olvidar, asimismo, según hemos dado, que la concesión es tanto un acto legislativo como un contrato administrativo y su interpretación debe atender tanto al propósito desinteresado que siempre anima la voluntad del soberano como a la intención especial de la voluntad contractual. Así el propósito común de sacar a las tierras baldías de su estado de naturaleza para darle productividad y participación en la economía del Estado, se une al propósito particular del concesionario, atendidas las dificultades no previstas por el propósito común, de trocar las siembras de hortalizas por las de pasto y el negocio de horticultura por la cría de ganado, que es también una forma de situar los islotes en el amillaramiento y en el tráfico lucrativo del comercio.

Descartada la posibilidad de una causa de nulidad extraregistral que pueda alterar la legitimidad aparente del título inscrito, pierde su mejor fundamento la alegación del Estado

Libre Asociado de Puerto Rico de ser dicho cuerpo político el dueño de todo terreno sometido a una concesión condicional incumplida. Ésto nos obliga a considerar el presente recurso como si se tratara de la investigación de un procedimiento ordinario de expropiación por el Estado de propiedad privada, sujeto a la disposición constitucional, que "no se tomará o perjudicará la propiedad privada para uso público a no ser mediante el pago de una justa compensación." Como en el procedimiento se partió del supuesto que la propiedad era del Estado y no de los terceros de buena fe que adquirieron siguiendo las constancias del registro, lo primero que necesita enmendarse es el valor justo y razonable de la propiedad al momento de ser tomada. Siendo esto así, la resolución de fecha 31 de enero de 1966 de la Sala de Expropiaciones del Tribunal Superior de Puerto Rico en el caso Núm. E-63-71, declarando: "1—Que el Estado Libre Asociado de Puerto Rico carecía de título, derecho e interés en los islotes objeto de expropiación y que el dominio sobre los mismos pertenecía a la co-demandada Best Builders, Inc." y "2—Que la parte demandada tiene derecho al valor justo y razonable en el mercado de las propiedades a la fecha de su expropiación," se ajustan a derecho y deben ser sostenidas, *anulándose el auto expedido.*

El Juez Asociado Señor Ramírez Bages no intervino.